UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PAMELA LYNN DIEMEL,

Plaintiff,

v.

Case No. 25-cv-1093-bhl

FRANK BISIGNANO, Commissioner of the Social Security Administration,

Defendant.

## DECISION AND ORDER

Plaintiff Pamela Diemel seeks review of the final decision of the Commissioner of the Social Security Administration, denying her claim for supplemental security income (SSI) under the Social Security Act. For the reasons set forth below, the Commissioner's decision is affirmed.

## BACKGROUND

On February 6, 2022, Diemel applied for SSI alleging her disability began on the filing date, when she was 58 years old. (ECF No. 9-3 at 16; ECF No. 9-4 at 2.) After her claims were denied initially and on reconsideration, she requested a hearing before an administrative law judge (ALJ). (ECF No. 9-5 at 4, 10, 19.) At a September 16, 2024 hearing, the ALJ heard testimony from Diemel and a vocational expert. (ECF No. 9-3 at 16.) The ALJ then issued a decision on October 25, 2026 in which he followed the five-step sequential evaluation of disability set forth in 20 C.F.R. §419.920(a) and found that Diemel's impairments were limiting but not fully disabling. (*Id.* at 16–32.) The ALJ further determined that Diemel could perform a number of jobs that exist in significant numbers in the national economy and therefore she was not disabled. (*Id.* at 31–32.) On May 28, 2025, the Appeals Council denied Diemel's request for review of that decision. (*Id.* at 2–4.) Diemel now seeks judicial review pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

The triggering event for Diemel's disability claims occurred in July 2019, when two of her sons were tragically murdered. (ECF No. 9-3 at 25.) Less than two years later, by 2021, Diemel had been diagnosed for anxiety managed with Xanax and Bupropion and was also taking

benzodiazepine for depression. (*Id.* (citing ECF No. 9-8 at 37).) She also occasionally used cannabidiol. (*Id.*)

In May 2021, Dr. Jasmine Wiley, M.D. diagnosed Diemel with attention deficit disorder (ADD) without hyperactivity, noted that Diemel indicated her ADD was poorly controlled, and advised her to continue with counseling. (*Id.* at 26 (citing ECF No. 9-8 at 34).) In June 2021, a counselor suggested Diemel apply for disability due to her severe posttraumatic stress disorder (PTSD). (ECF No. 9-8 at 440.) Diemel reported that she could not go grocery shopping because she was afraid of people approaching her and talking about her sons' murders. (*Id.*) Diemel further reported that she had been running her own private business providing personal home care. (*Id.*)

On February 6, 2022, Diemel applied for SSI, alleging she suffered from: PTSD, depression, tennis elbow and sleep disorder. (ECF No. 9-4 at 2.) Her medical records indicate that Diemel had established mental health care in May 2022 and reported issues with memory, anger at "certain people when they say things," and at times staying in bed for two days. (ECF No. 9-8 at 98.) Her provider, a licensed professional counselor, observed that Diemel had good alertness, good eye contact, spontaneous and appropriate speech, normal and appropriate mood, appropriate affect, appropriate, logical and coherent thought process, normal thought content, alert and oriented cognition, good insight, and intact judgment. (*Id.* at 100.) Later that month, Diemel's treating professional indicated that she presented as calm and cooperative, with an appropriate affect and good eye contract. (*Id.* at 96.) It is unclear whether Diemel continued with this licensed professional counselor, but the record confirms that from April 2021 to October 2023, she received outpatient Christian counseling from Leslie Dunn. (ECF No. 9-8 at 99, 181; ECF No. 9-10 at 101–03.)

In January 2023, Deirdre Radosevich, Ph.D. performed a mental status examination in connection with Diemel's SSI application. Dr. Radosevich noted that Diemel was able to follow a three-step command, had no difficulty following conversations or being distracted, had correctly spelled "world" forward and backward, and engaged in "serial 7s tasks" producing one correct calculation out of five. (ECF No. 9-8 at 118–21.) During the examination, Diemel presented positively, with no delusions, hallucinations, suicidal or homicidal thoughts; no evidence of disturbance of thought, content, or process; and no presence of pressured speech. (*Id.* at 119.) She provided logical answers that were clearly expressed. (*Id.*) Dr. Radosevich observed that Diemel was cooperative, polite, and made appropriate eye contact while also demonstrating a sad mood

and congruent affect. (*Id.*) Diemel also discussed current events, engaged in abstract thinking and demonstrated good insight and judgment. (*Id.* at 119–20.) Dr. Radosevich determined that Diemel was *mildly* limited in her ability to understand, remember, and carry out simple instructions; *moderately* limited in her ability to respond appropriately to supervisors and coworkers and maintain concentration, attention, and work pace; and *markedly* limited in her ability to withstand routine work stressors and adapt to change. (*Id.* at 120.)

Through mid-2024, Diemel received medical treatment for anxiety and depression through her primary care provider. In December 2023, her medical provider indicated that Diemel reported having stable symptoms, improved sleep with Trazodone, and a "little more energy." (ECF No. 9-3 at 27 (citing ECF No. 9-8 at 317–19).) She further reported "insomnia, social phobia, irritability, and difficulty concentrating" but denied "panic, agoraphobia and social phobia." (*Id.* (citing ECF No. 9-8 at 319).) In February 2024, Diemel reported no panic, agoraphobia or social phobia, continued grief and ongoing stress, and that medications were "somewhat effective" without any side effects. (*Id.* (citing 9-8 at 289.) In June 2024, Diemel reported her symptoms were doing well, she was sleeping well, and her anxiety and depression were controlled on medication. (*Id.* (citing ECF No. 9-8 at 238).) Her medical records also note that her ADHD was stable. (*Id.* (citing ECF No. 9-8 at 244).)

In connection with her disability claim, state agency psychologists Jason Kocina, Psy.D. and Annette De Paz reviewed both Diemel's medical records and Dr. Radosevich's report.[1] Dr. Kocina found that Diemel had no limitations in understanding and memory, sustained concentration and persistence and social interactions. (ECF No. 9-4 at 6.) Dr. Kocina also found that Diemel had adaption limitations, explaining in the narrative portion of his report that Diemel could "adapt to no more than occasional changes in an otherwise routine work setting." (*Id.* at 7.) At the reconsideration level, Dr. De Paz adopted the report of Dr. Kocina. Both mental health professionals found Dr. Radosevich's report "less supported by generally [normal] performance on [mental status exam] tasks." (ECF No. 9-3 at 6, 16.) They believed that the opinion was "an overestimate of the severity" of Diemel's limitations. (*Id.*) Both reviewing psychologists found Diemel could perform work with unlimited social interactions that required her to adapt to no more than occasional changes in an otherwise routing work setting. (ECF No. 9-4 at 7, 17.)

[1] De Paz's degree is not listed in the disability determination explanation, however, her medical specialty code is listed as "37 Psychiatry." (ECF No. 9-4 at 15.)

At the hearing, Diemel testified that she stopped working due to a lack of functioning, depression, and PTSD, following the loss of her sons and her attendance at court hearings. (ECF No. 9-3 at 47.) She reported having a short temper, rarely traveling anywhere outside the home, and remaining in bed two to three days per week due to her mental symptoms. (*Id.* at 47–49.) Diemel also reported that her symptoms impacted cooking, shopping, attending social events, and traveling alone. (*Id.* at 50–51.)

The ALJ employed the five-step sequential evaluation of disability required in the regulations. At step one, the ALJ concluded that Diemel had not engaged in substantial gainful activity since February 6, 2022, the application date. (ECF No. 9-3 at 18.) At step two, the ALJ found that Diemel had several severe impairments: PTSD, attention deficit hyperactivity disorder (ADHD) – inattentive type, depressive disorder, anxiety disorder, situational mixed anxiety and depressive disorder, and insomnia. (*Id.*) At step three, the ALJ determined that none of those impairments met or equaled any of the agency's impairment listings. (*Id.* at 21.) At step four, the ALJ found that Diemel had the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional limitations: Diemel can understand, remember and carry out simple instructions; maintain attention, concentration, persistence and pace for two-hour segments; use judgment to make simple work-related decisions; deal with occasional changes in a routine work setting; and can frequently interact with supervisors and coworkers, and occasionally interact with the public. (*Id.* at 24.) At step five, the ALJ found that considering Diemel's age, education, work experience and RFC, jobs exist in significant numbers in the national economy that Diemel could perform, such as laundry worker, linen room attendant, and dry cleaner helper. (*Id.* at 31–32.) The ALJ therefore concluded that Diemel was not disabled. (*Id*. at 32.)

## LEGAL STANDARD

The Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* In rendering a decision, the ALJ "must build a logical bridge from

the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053–54 (7th Cir. 2024) (citations omitted). All that is required is that "ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow [a reviewing court] to assess the validity of the agency's ultimate findings and afford [the plaintiff] meaningful judicial review." *Id.* at 1054 (cleaned up) (citations omitted). In reviewing the record, the Court does not displace the ALJ's judgment by reweighing evidence, resolving evidentiary conflicts, or deciding questions of credibility. *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022). Judicial review is deferential and is limited to the rationales offered by the ALJ. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)). If substantial evidence supports the ALJ's disability determination, the decision must be affirmed, "even where reasonable minds might disagree about the outcome." *Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023).

## ANALYSIS

Diemel argues that the ALJ committed three reversible errors in concluding that Diemel was not disabled. First, Diemel alleges that the ALJ's mental RFC was not supported by substantial evidence. (ECF No. 12 at 6–10.) Second, Diemel argues that the ALJ's evaluation of Dr. Radosevich's and Ms. Dunn's opinions did not comport with the requirements of 20 C.F.R. §416.920c. (*Id.* at 11–19.) Third, Diemel argues that the ALJ's evaluation of Diemel's subjective symptoms was patently wrong and inconsistent with the standards of Social Security Ruling (SSR) 16-3p. (*Id.* at 19–21.) Because the record does not support any of these challenges, the Commissioner's decision will be affirmed.

### I. The ALJ's Mental RFC Was Supported by Substantial Evidence.

Diemel challenges the ALJ's RFC determination in two ways. First, she argues that the ALJ erred in equating moderate deficiencies in concentration, persistence and pace with the ability to perform simple work tasks with no additional restrictions. (ECF No. 12 at 6.) Second, Diemel

contends that the ALJ's adoption of a two-hour attention and concentration restriction was flawed and thus "no limitation at all." (*Id.* at 7.)

In crafting the RFC, the ALJ's relied on evidence presented by state agency psychologists, the consultative examination, treatment notes, and Diemel's testimony. (ECF No. 9-3 at 24.) The AJL also specifically accommodated Diemel's moderate limitations in concentration, persistence and pace, by restricting her to understanding, remembering and carrying out simple instructions, maintaining attention, concentration, persistence and pace for two-hour segments, and using judgment to make simple work-related decisions, dealing with occasional changes in a routine work setting and frequently interacting with supervisors and coworkers and occasionally interacting with the public. (*Id.*) The record confirms that the ALJ's RFC determination was supported by substantial evidence.

In the disability determination evaluation worksheets, the state agency reviewing psychologists found Deimel had mild limitations in concentration, persistence and pace. (ECF No. 9-4 at 4, 14.) Dr. Kocina noted that Diemel had a "MDI (medically determinable impairment) of PTSD" and had been diagnosed with ADHD, depression, and anxiety by "non-psych AMS [acceptable medical source] providers with no MDI established." (*Id.* at 5.) Dr. Radosevich provided a moderate limitation in maintaining concentration, attention, and work pace. (ECF No. 9-8 at 120.) The ALJ adopted Dr. Radosevich's limitation as to concentration, attention and pace and assessed greater restrictions than were found by the agency's reviewing psychologists. (ECF No. 9-3 at 27–29.) The ALJ then found that Diemel can perform the full-range of work at all exertional levels with nonexertional limitations including understanding, remembering and carrying out simple instructions and maintaining attention, concentration, persistence and pace for two-hour segments. (ECF No. 9-3 at 24.)

The regulations provide that a moderate limitation in any of the functional areas indicates that a claimant's ability to function in that area "independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1§12.00(F)(2)(c). Accordingly, the Seventh Circuit has held that a finding that a social security applicant is "moderately" limited does not mean she is performing "bad" or "inadequately," but merely indicates that the applicant functions "fair" in that area. *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) ("a 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace."); *Dudley v. Berryhill*, 773 F. App'x 838, 842 (7th Cir. 2019)

(affirming the ALJ's decision where the ALJ "specifically limited plaintiff to 'work requiring the exercise of only simple judgment,' – a limitation that specifically accounts for [plaintiff's] concentration difficulties.") In *Pufahl v. Bisignano*, the Seventh Circuit held that restrictions to simple, routine tasks in two-hour increments "naturally function as limitations on one's ability to complete a normal workday without interruption and to perform at a consistent pace." 142 F.4th 446, 460 n.27 (7th Cir. 2025). Under Seventh Circuit law, an RFC that restricts a claimant to carrying out simple instructions, making simple work-related decisions, and maintaining concentration persistence and pace for two-hour segments is thus consistent with a finding that the applicant has moderate limitations in concentration, persistence, and pace. Diemel's argument to the contrary fails based on the regulation and case law.

Diemel also finds fault with the ALJ's conclusion that she could manage in a workplace with restricted interpersonal interactions and contends that the ALJ "failed to logically connect evidence of Ms. Diemel's appropriate eye contact and cooperation during examination" to the finding that she could maintain frequent interactions with coworkers and supervisors, or occasional interactions with the public, in the workplace. (ECF No. 12 at 9.) The ALJ explained that his findings were supported by the lack of observations of difficulties with demeanor in the medical records and Diemel's "routinely calm, cooperative, and/or . . . normal behavior on examination," observations that support Diemel's ability to interact with others. (ECF No. 9-3 at 22 (citing ECF No. 9-8 at 96, 119, 182, 197, 242, 290).)

To merit remand, Diemel must point to evidence requiring the conclusion that she was unable to maintain attention and concentration on unskilled tasks for two-hour periods, which she has not done. Diemel cites to her reports of fatigue, insomnia and impaired concentration, all of which she argues "would inherently impact her ability to remain on task and productive for unskilled work tasks." (ECF No. 12 at 7.) But these subjective reports of Diemel's own symptoms (ECF No. 12 at 7 (citing ECF No. 9-7 at 51; ECF No. 9-8 at 237, 343, 398, 454; ECF No. 9-10 at 101)) are undermined by objective observations in the record. (*See* ECF No. 9-8 at 19, 34, 76, 93, 100, 119–20, 140, 335, 344.) This alternative evidence supports the ALJ's decision. As the Seventh Circuit has explained, the mere "presence of contradictory evidence and arguments does not mean the ALJ's determination is not supported by substantial evidence." *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021). The existence of other evidence from which the ALJ could have reached a different conclusion does not render the ALJ's ruling incorrect or require a remand.

Rather, it is Diemel's "burden to show that the ALJ's decision is not supported by substantial evidence." *Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir. 2014). Here, Diemel has not shown that the evidence she cites compelled the ALJ to adopt additional RFC limitations. *Delong v. Saul*, 844 F. App'x 894, 900 (7th Cir 2021) ("But even if the record could support such limitations, there is nothing that compels them.").

And, an ALJ is not required to discuss every piece of evidence. *Pepper*, 712 F.3d at 363 ("an ALJ is not required to discuss every snippet of information from the medical records that might be inconsistent with the rest of the objective medical evidence" (citing *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009)). The ALJ thoroughly discussed the medical records, which show that Diemel managed her anxiety, depression, and attention deficit disorder through medication management appointments with her primary care provider. (ECF No. 9-3 at 25–27.) Given the overall record, the ALJ reasonably concluded that Diemel could perform the full range of work and augmented the state agency psychologists' findings with simple, routine tasks and occasional changes. (*Id.* at 24.) The ALJ has "said enough here to support [his] decision and permit meaningful . . . review," which is sufficient to meet "the most minimal of articulation requirements" to which the ALJ is subject. *Thorlton v. King*, 127 F.4th 1078, 1083 (7th Cir. 2025) (quoting *Warnell*, 97 F.4th at 1053).

## II. The ALJ's Evaluation of Dr. Radosevich's and Ms. Dunn's Opinions Comported with the Requirements of 20 C.F.R. 416.920c.

Diemel next argues that the ALJ erred in his evaluation of the medical opinions and contends that the ALJ did not evaluate the opinions of Dr. Radosevich or Diemel's treating counselor in compliance with the requirements of 20 C.F.R. §416.920c. (ECF No. 12 at 11–18.) The record again supports the ALJ's analysis.

The ALJ evaluated the consultative examination records of Dr. Radosevich and found her conclusions "not entirely persuasive." (ECF No. 9-3 at 28.) The ALJ noted that Dr. Radosevich observed that Diemel demonstrated good judgment, good insight and awareness of her limitations and diagnosed Diemel for PTSD. Dr. Radosevich opined that Diemel had: (1) mild limitations to understand, remember, and carry out simple instructions; (2) moderate limitations to respond appropriately to supervisors and co-workers and maintain concentration, attention, and work pace; and (3) marked limitations to withstand routine work stressors and adapt to change. (*Id.*) The ALJ found that while Dr. Radosevich's opinions were "somewhat supported by the objective findings

at that time, but not entirely consistent with the overall record" and "not supported by the exam findings at that time." (*Id.*) In particular, the ALJ noted Dr. Radosevich's opinion that Diemel had marked limitations to withstand routine work stressors and to adapt to change was inconsistent with other evidence, including Diemel's good insight and judgment, her appropriate responses during the exam, and her reported ability to play golf, do chores and shower every three days. (*Id.* at 28–29.) The ALJ found that other than the marked limitations, Dr. Radosevich's opinion was supported "to the extent consistent with the overall record, including claimant's own functioning report as well as report from her significant other, that shows the claimant does not have significant problems with simple instructions nor with managing her own finances." (ECF No. 9-3 at 28–29.) The ALJ further noted that Dr. Radosevich's opinion was vague and not specific to vocationally relevant functional limitations which reduced its persuasiveness. (*Id.* at 29.) The ALJ found Diemel had a moderate limitation with regard to remembering and applying information, interacting with others, concentrating, persisting or maintaining pace, and adapting or managing oneself. (ECF No. 9-3 at 22–23.) The ALJ only rejected Dr. Radosevich's opinion that Diemel had marked limitations in her ability to withstand routine work stressors and adapt to change. The ALJ's RFC was therefore consistent with Dr. Radosevich's opinion that Diemel had mild to moderate limitations carrying out simple instructions, maintaining attention and concentration and interacting with others in the workplace.

Diemel argues that the ALJ did not sufficiently address the supportability and consistency of Dr. Radosevich's analysis because the ALJ "focused on the normal findings" to the exclusion of the abnormal findings. (ECF No. 12 at 12.) The ALJ's explanation for discounting in part the opinion of Dr. Radosevich was sufficient and supported by substantial evidence. *Crowell v. Kijakazi*, 72 F.4th 810, 815–16 (7th Cir. 2023) (noting that the ALJ sufficiently explained why he gave the most weight to the opinions of two state agency psychologists and holding that an ALJ "is not obligated to give controlling weight to the treating physician if he finds that opinion not worthy of such weight."). Although Diemel complains that the ALJ found that Diemel was more limited than the state-agency psychologists did, that argument does not establish grounds for remand. The ALJ augmented the state agency psychologists' findings and accommodated Diemel's assessed mental impairments. As previously noted, it is the ALJ's job to evaluate the evidence and craft the RFC—the most a claimant can do in the workplace.

Diemel also argues that the ALJ erred in his evaluation of two statements submitted by her counselor, Leslie Dunn. (ECF No. 12 at 16–19.) Ms. Dunn opined that Diemel's "emotional and mental quality of life continued to decline and that she was at an impasse" and unlikely to return "to a consistent normal healthy and productive lifestyle[.]" (ECF No. 9-3 at 29.) The ALJ found Ms. Dunn's opinions "not entirely persuasive" and noted that Ms. Dunn was not an acceptable medical source. (*Id.*); *see* 20 C.F.R. §416.902(a). The ALJ explained that he found her opinions vague, not well-explained and based on Diemel's subjective complaints rather than objective observations. (*Id.*) *see* 20 C.F.R. §416.920c(c)(1.) The ALJ further noted that Ms. Dunn's opinions were not entirely consistent with the overall record that showed "the claimant with some ability to adapt/manage as opined by the DDS consultants as well as the consultative examiner." (*Id.*) This was an adequate explanation for the ALJ's treatment of Ms. Dunn's evaluation.

In the end, the ALJ's job is to weigh the evidence and determine a claimant's functional capacity. *See* 20 C.F.R. §404.1546(c) ("If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity."); 20 C.F.R. §404.1520c(a) ("We will not defer or given any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.") The ALJ therefore is not required to rely on a medical opinion in determining a claimant's RFC. *See Schmidt v Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) ("[T]he ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians.") Here, the ALJ evaluated evidence from multiple sources and noted that Diemel's mental status examinations were primarily within normal limits with the exception of anxious and depressed presentations. (ECF No. 9-3 at 25–27, 30.) As previously noted, it is the ALJ's job to evaluate the evidence and craft the RFC – the most a claimant can do in the workplace. Diemel's arguments essentially improperly ask the Court to reweigh the evidence and replace the ALJ's reasoning with its own.

**III. The ALJ's Subjective Symptom Analysis Was Not "Patently Wrong."**

Diemel's final contention is that the ALJ's subjective symptom analysis was "patently wrong" because the ALJ provided a short summary of Diemel's activities without any detailed explanation or evaluation. (ECF No. 12 at 19.) When determining the existence or extent of a

disability, SSR 16-3p requires ALJs to consider a claimant's "own description or statement of . . . her physical or mental impairment(s)." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). This is a two-step process. First, the ALJ considers "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." *Id.* at *3. Second, if there is such an impairment, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* Because an ALJ "is in the best position" to make this credibility determination, reviewing courts will reverse it only if "patently wrong." *Simila*, 573 F.3d at 517 (citations omitted); *see also Tutwiler v. Kijakazi*, 87 F.4th 853, 859 (7th Cir. 2023). And a credibility finding is not "patently wrong" if the ALJ discredited the claimant's subjective testimony based on "many specific reasons supported by the evidence." *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018).

The ALJ identified almost all of the evidence Diemel cites. Specifically, the ALJ noted that Diemel reported that she remains in bed for up to three days per week; she grocery shops early in the morning or late at night; she "sometimes slacks on personal care;" and she cannot drive long distances. (ECF No. 9-3 at 25.) The ALJ also noted that Diemel is able to make simple meals, is able to drive and can drive to smaller places and towns and has limited social activities but sees her mom, her sister and a friend on occasion. (*Id.*) Thus, the ALJ addressed Diemel's evidence of subjective symptoms, but came to a different conclusion about their relevance or significance.

Diemel argues that the ALJ failed to comply with SSR 16-3p by not considering the treatment Diemel pursued. (ECF No. 12 at 20–21.) The ALJ, however, did discuss Diemel's course of treatment, including a detailed discussion, multiple medication changes and her providers' recommendation that she stay in counseling. (ECF No. 9-3 at 25–27.) The ALJ noted that the medical record showed improvement with medications and mental status exams were often unremarkable. (*Id.* at 27–30.) Diemel's contention that the ALJ's assessment of Diemel's subjective complaints was lacking is thus without merit as the ALJ reasonably weighed Diemel's allegations against a thorough evaluation of the medical evidence. "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) (citation omitted); *see also* 42 U.S.C. §423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability. . . . Objective medical evidence of

pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.”). And, “an ALJ need not discuss every detail related to every factor” in assessing a claimant’s subjective symptoms. *Gedatus*, 994 F.3d at 903 (citing *Pepper*, 712 F.3d at 362). In determining that Diemel could perform the full range of work with restrictions on her abilities to make decisions, respond to changes in the work setting, and interact with others the ALJ reasonably considered Diemel’s treatment and the resulting improvement in her symptoms while acknowledging that the treatments did not completely alleviate her symptoms. Diemel has failed to show that the ALJ’s evaluation of her symptoms lacked substantial evidentiary support or was “patently wrong.” *See Simila*, 573 F.3d at 517.

As previously noted, an ALJ “need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning.” *Warnell*, 97 F.4th at 1053–54 (citations omitted). An ALJ’s decision should be affirmed when the ALJ minimally articulates the bases for his conclusions. *See Morales v. O’Malley*, 103 F.4th 469, 471 (7th Cir. 2024). Because none of Diemel’s asserted grounds provides a basis for remand, the Commissioner’s decision is affirmed, and the case is dismissed.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that pursuant to sentence four of 42 U.S.C. §405(g), the decision of the Commissioner of the Social Security Administration is **AFFIRMED**, and the case is **dismissed**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on September 30, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge